**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) | **Civil Action No.** |
| **Plaintiff,** | ) ) | **COMPLAINT** |
| **v.** | ) ) | <u>**JURY TRIAL DEMANDED**</u> |
| **DYNAMIC MEDICAL SERVICES, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

<u>**NATURE OF ACTION**</u>

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq*. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of religion and to provide relief to Rommy Sanchez ("Sanchez"), Norma Rodriguez ("Rodriguez"), Yanileydis Capote ("Capote"), Maykel Ruz ("Ruz"), and a class of current and/or former employees of Defendant Dynamic Medical Services, Inc. ("Dynamic"), who were victims of such unlawful employment practices. As alleged with greater specificity below, Sanchez, Rodriguez, Capote, Ruz and a class of current and/or former employees of Dynamic were subjected to disparate treatment based on religion when Dynamic coerced them to adopt Scientology religious views and practices as a condition of continued employment. Sanchez, Rodriguez, Capote, Ruz and a class of current and/or former employees of Dynamic were also subjected to a hostile work environment based on religion by Dynamic's unwelcome imposition upon them of Scientology religious views and

practices.  Dynamic also terminated Sanchez and Rodriguez in retaliation for opposing Dynamic's unlawful practices.  Further, Dynamic failed to accommodate the religious beliefs of Rodriguez.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful herein were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## PARTIES

3.      The U.S. Equal Employment Opportunity Commission ("Commission" or "EEOC") is an Agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      Dynamic provides medical and chiropractic services to patients.

5.      Dr. Dennis Nobbe ("Nobbe") is the owner of Dynamic.

6.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e (b), (g), and (h).

## CONDITIONS PRECEDENT

7.      More than thirty days prior to the institution of this lawsuit, Sanchez,

Rodriguez, Capote, and Ruz filed charges of discrimination with the Commission

alleging violations of Title VII by Dynamic.

8.      On November 29, 2011, the Commission issued a notice to Dynamic that

it was "expanding the scope of the investigation . . . to include the religious

discrimination practices of Dynamic Medical Services as they affect a class, or classes, of

individuals, under Title VII of the Civil Rights Act of 1964, as amended."

9.      Prior to the institution of this lawsuit, the Commission issued Letters of

Determination finding reasonable cause to believe that (1) Dynamic subjected Norma

Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis Capote, and a class of individuals

to a hostile work environment based on their religion; (2) Dynamic subjected Norma

Rodriguez, Maykel Ruz, Rommy Sanchez, and Yanileydis Capote to disparate treatment

because of their failure to conform to employer's religion; (3) Dynamic failed to

accommodate the religious beliefs of Norma Rodriguez, Maykel Ruz, Rommy Sanchez,

and Yanileydis Capote; (4) and Dynamic terminated Norma Rodriguez and Rommy

Sanchez in retaliation for opposing Dynamic's unlawful employment practices.

10.     Prior to institution of this lawsuit, the Commission's representatives

attempted to eliminate the unlawful employment practices alleged below and to effect

voluntary compliance with Title VII through informal methods of conciliation,

conference and persuasion within the meaning of Section 706(b) of Title VII, 42 U.S.C. §

2000e-5(b).

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

12.     Dynamic provides medical & chiropractic care to enable patients to overcome a variety of health problems.

13.     Dynamic has two clinical locations.  One at 8303 SW 40th Street (Bird Road), Miami, Florida, which is in the Coral Gables neighborhood ("Coral Gables Clinic"); and another at 1685 W 49th Street, Suite #1104, Hialeah, Florida, which is located in Westland Mall ("Westland Mall Clinic").

14.     Dynamic has a third place of business, a non-clinic location, near the Coral Gables Clinic, where, among others, "callers" work.

15.     Callers are employees responsible for calling patients and prospective patients to make appointments.

16.     Dynamic also employs salespeople.  A salesperson's job consists of going to high traffic commercial areas, advertising Dynamic's services, and convincing people to make an appointment for free services or treatments.

17.     If a person agreed to make an appointment for free services or treatment, the potential patient filled out a form and handed it to the salesperson who then took the form back to a "caller."

18.     Each day, a salesperson's goal was to get at least twelve appointment sheets.  In other words, each day a salesperson had to convince twelve people to make an appointment for free services or treatments.  The caller then had to call the potential patient to ensure the patient arrived at one of the clinics for free services or treatments.

4

19.     Dynamic tracked the number of people who arrived for free services and treatment.  Dynamic referred to these people as "arrivals."

20.     Callers followed up with arrivals to convince them to come in for other appointments, which would be paid by the patient or patient's insurer.

21.     Dynamic tracked the number of people who made more appointments for treatment and services paid for by patient and/or patient's insurer.  Dynamic referred to these people as "stays."

22.     Dynamic tracked the number of arrivals and stays attributable to each caller and salesperson.

23.     Scientology is a religion developed by L. Ron Hubbard.

24.     Dynamic requires employees to attend courses that involve participating in Scientology religious practices ("Course(s)").

25.     Courses use written materials developed by L. Ron Hubbard.

26.     As part of Courses, employees do exercises that are Scientology religious practices and exercises.

27.     During Courses, instructors refer to writings of L. Ron Hubbard, such as "The Way To Happiness," "Dianetics," and "Original Thesis," to assist employees during the Course.

28.     "The Way To Happiness," "Dianetics," and "Original Thesis," are Scientology religious writings.

29.     Jose Luis Alarcon ("Alarcon") is an employee of Dynamic who manages the Courses for Dynamic and is a Course instructor.

30.     Alarcon is also responsible for completing paperwork with new employees, reviewing employee handbook and policies with new employees, and completing W-4 forms.

31.     Alarcon makes recommendations to Nobbe about employment decisions.

32.     Charlie Fox ("Fox") is an employee of Dynamic who assisted in running and organizing the Courses, and was also a Course instructor.

33.     Maria Lita Reyes ("Lita") is an employee of Dynamic and supervises the Courses.

34.     Lita is also a supervisor and does administrative, personnel, and accounting functions.

35.     Carolina Crespo ("Crespo") was an employee of Dynamic from 2008 to 2010.  Crespo supervised the Courses.

36.     Lucy Montero ("Montero") is a Dynamic employee who supervises sales and marketing employees.

37.     Montero prepares staff schedules, coordinates workload of employees in the field, trains new hires, interviews prospective employees and makes hiring recommendations to Alarcon and Nobbe.

38.     Ana Garcia is an employee of Dynamic who supervises about fifteen employees.  She is responsible for ensuring the clinics are operating properly. She is also responsible for terminating employees.

39.     Courses took place in a small conference room at the Westland Mall Clinic ("Course Room").

40.     The Course Room was specially constructed for purpose of holding Courses.

41.     Prior to Course Room being built, Courses took place in unused patient rooms at Dynamic clinic locations.

42.     Course Room had shelves along the wall that were filled with Scientology religious books such as "Dianetics" and "The Way To Happiness."

43.     Every Monday all employees, including salespeople and callers, held a meeting with Nobbe and other supervisors ("Monday Meetings").

44.     At the Monday Meetings callers and salespeople announced the numbers of arrivals and stays they achieved.

45.     At the Monday Meetings salespeople would receive their schedule for the week.

46.     A salesperson's schedule would state where the employee had to go to do sales, what hours a sales shift lasted, and when and where the employee had to attend Courses.

<u>Norma Rodriguez</u>

47.     Norma Rodriguez worked for Dynamic from April 2008 to March 8, 2010.

48.     Monetro interviewed Rodriguez.

49.     After consulting with Nobbe, Montero told Rodriguez she was hired as salesperson.

50.      On or about June 2008, when Rodriguez went to one of the Dynamic clinic locations to turn-in her appointment sheets, Alarcon told her she had to start attending the Courses.

51.     Also, at a Monday Meeting Rodriguez attended, Alarcon announced to all employees they all had to attend Courses.

52.     Rodriguez received a schedule instructing her to attend Courses in the morning from 9 a.m. to noon and do sales in the afternoon.

53.     Rodriguez attended Courses Monday through Friday from 9 a.m. to noon from approximately June 2008 to the time she was terminated in March 2010.

54.     Examples of exercises Rodriguez did during the Courses included: (1) sit facing another person, and stay absolutely still for eight hours, and if one of the instructors saw Rodriguez's eyes stray or a finger move or her body lean, the time started again; (2) scream at an ashtray; (3) walk out to someone in the mall, stop them, and stare at them without talking to them.  These exercises are practices done by Scientologists as part of their religion.

55.     On one occasion a female instructor told Rodriguez that she should go to the Church of Scientology to undergo detoxification.

56.     A week before Rodriguez was terminated, Alarcon told Rodriguez that she had to start attending Courses at the Church of Scientology and that Montero, Rodriguez's supervisor, would provide her with a new schedule that incorporated Courses at the Church of Scientology into Rodriguez's schedule.  After this conversation with Alarcon, Rodriguez told Montero she did not want to go to the Church of Scientology.  Montero responded to Rodriguez that Nobbe wanted everyone to go to the Church of Scientology, and that Rodriguez had speak to Alarcon about not wanting to attend.  Rodriguez spoke with Alarcon and told him she is a Jehovah's Witness and that she did not want to go to the Church of Scientology for Courses.   Alarcon said other

8

Christians attend the Church of Scientology for Courses. Rodriguez responded that she did not care about those people and that she did not want to go. Alarcon made a disapproving gesture with his face. The Monday following Rodriguez's conversation with Montero and Alarcon, Montero told Rodriguez she was fired.

Maykel Ruz

57.     Maykel Ruz worked for Dynamic from December 2008 to March 2010.

58.     Ruz's wife, Danie Gomez, already worked at Dynamic and recommended Ruz for a job. Ruz's wife was a salesperson.

59.     Alarcon interviewed Ruz and told him he would be hired as salesperson and would start the next day.

60.     Approximately two weeks after the start of Ruz's employment at Dynamic, Alarcon told Ruz he had to start attending Courses.

61.     Examples of exercises Ruz did during the Courses included: (1) sit facing another person, and stay absolutely still for eight hours, and if one of the instructors saw Ruz's eyes stray or a finger move or his body lean, the time started again; (2) scream at an ashtray; (3) talking to the wall; (4) physically push a man out of the way so Ruz could walk through a door. These exercises are practices done by Scientologists as part of their religion.

62.     Lita told Ruz to sign a paper that said the Courses were good for him.

63.     Alarcon kept track of how much time Ruz spent in the Courses and would tell Ruz how much time he had left in a particular Course.

64.     Ruz took Courses from about two weeks after he started working at Dynamic until he left the company.

9

65.     One day, on or about October 2009, Ruz and his wife did not have money for gas to get them from home to attend the Course for which they were scheduled, and then to the locale where they had to do sales.  Ruz and his wife did not have money because several of their paychecks from Dynamic had bounced for insufficient funds.  As a result, Ruz and his wife did not arrive at the Course.  Alarcon called Ruz and Ruz explained that he did not have gas or money to buy gas.  Alarcon said it is not excuse not to have gas, that Nobbe was waiting for Ruz and his wife, and that they had to come to the Course for which they were scheduled to attend.  Ruz and his wife showed up at the Westland Mall Clinic.  Ruz, his wife, Nobbe, and Alarcon met immediately.  Nobbe spoke to them in English and Alarcon translated.  Nobbe, through Alarcon, told them they had to attend the Courses, and that he could fire them at anytime because "Balseros [refers to Cuban immigrant who arrive by rafts] like you arrive every day."  The meeting lasted for about 20-30 minutes.  After the conversation, Ruz and his wife took the Course. They did not do sales work that day.

66.     On or about February 2009, Ruz told Montero he did not want to attend the Courses.  Montero responded, "This will help you in life," and "it is the best thing for you."  She also said, "You have to because Nobbe requires it," and she said "he [Nobbe] is paying for you to take these courses."

67.     On another occasion, during one of the Courses, Ruz told Alarcon that he didn't understand their religion and didn't want to do it.  Alarcon told Ruz, "You will do it because Nobbe requires it."

68.     On or about December 2009, Ruz attended a meeting Nobbe and Alarcon held with all the callers, sales people, and therapist.  Nobbe spoke and Alarcon translated

for him.  Nobbe, through Alarcon, said "you have to go to the church."  Nobbe explained

that callers would go as a group and sales people would go as a group.  During this time,

Ruz was on location doing sales until 1 a.m. so he did not go to Church of Scientology.

Alarcon would approach Ruz at least once a week and tell him he had to go to Church of

Scientology.  Nobbe approached Ruz at least two or three times telling him he had to go

to Church of Scientology.

69.     Ruz stopped attending the Courses.  On one occasion Nobbe told Ruz,

with Alarcon translating, that if Ruz did not attend Courses he could not work at

Dynamic.  Ruz went back to taking Courses because he did not want to get fired.

Approximately, a month later he again complained to Alarcon telling him he did not want

to do the Courses.  Alarcon went to make a call, came back, and told Ruz, "If you don't

continue attending Courses you have to leave."  Ruz resigned.

<u>Rommy Sanchez</u>

70.     Rommy Sanchez worked for Dynamic from approximately June or July

2007 to March 2010.

71.     Sanchez was a patient at the clinic and knew Alarcon and Ana Garcia,

both of whom recommended her.  She interviewed with Betsy Blair and started the day

after the interview.

72.     Sanchez's first worked as a caller, then, right before she was terminated,

she worked in telemarketing.

73.     On Sanchez's first day of work she was told she had to do the Courses.

74.     She took the Courses at the location at the Coral Gables Clinic, in unused

patient rooms, and did her work making calls at the nearby non-clinic location.

75.     She took Courses either from 9 a.m. to noon, or 1 p.m. to 5 p.m., or 9 a.m. to 5 p.m., Monday through Friday.

76.     Before starting the Course, Alarcon gave Sanchez a paper to sign that said she agreed with taking the Course.  Sanchez signed a paper for each Course she took, stating she agreed with taking the Course.

77.     Sanchez had to take "Learning to Learn" Course for a month.  She also took the course where she sat face to face staring at someone for eight hours without moving.

78.     If an instructor believed Sanchez did not understand a word or phrase in the Course materials she was reading, the instructor would ask her the part she did not understand, then the instructor would open the book "The Way to Happiness" or "Original Thesis," ask the her to read an excerpt from those books, and then re-read the Course materials.

79.     "The Way To Happiness" and "Original Thesis" are Scientology religious books.

80.     Sanchez was also forced to do the following: have a machine connected to her using cables, and sit and answer personal questions about her life while connected to this machine.  Sanchez was forced to do this three times a week for a month.  The machine Sanchez was connected to is an E-Meter.  The Electropsychometer or E-Meter is a Scientology "religious artifact."

81.     One day, at the end of 2009, Nobbe approached Sanchez, with Alarcon translating for him, and told her he wanted her to take a Course that would "purify" her. Afterward the conversation with Nobbe, Sanchez told Alarcon while the two of them

were alone that she did not want to do the Course.  Alarcon tried to convince her that the Course was good for her, that it would change her mind and detox her.  When Sanchez still said she did not want to do it, Alarcon said, "Remember you work for Dynamic and Nobbe is paying for this."

82.     Sanchez started the "purification" course at the end of 2009.  The purification course was held at the Church of Scientology in the Coral Gables neighborhood in Miami.

83.     Charlie Fox supervised the purification Course at the Church of Scientology.  He worked at the Westland Mall Clinic from 9 a.m. to noon and then went to the Church of Scientology and was there until 9 or 10 p.m.

84.     The Church of Scientology in Coral Gables has a front and back entrance. Through the front entrance there was the front desk and further to the left there was a classroom where members of the Church of Scientology took Courses.  Also in the front entrance there was a mural of Church of Scientology members.  The Church of Scientology members were displayed on the mural in order of importance.  Nobbe appeared on the mural close to the top, and Betsy Blair also appeared near the bottom. Through the back entrance was a small area with a desk, treadmills, a bathroom/changing room and a sauna.

85.     To do purification Course, Sanchez had to make her way to the back area, or enter through the back, and check-in with Fox who was stationed at the desk in the sauna area.  After checking in with Fox, Sanchez changed, jogged on treadmill for 20-30 minutes, took twenty pills that Fox told her were "vitamins," then she went into the sauna.  She had to be in the sauna for five hours.  Fox kept track of the time.  If Sanchez

left early or arrived late, Fox would tell her she had to make up the time.  Sanchez did

purification every single day, even weekends, from 2 p.m. to 7 p.m. from the end of 2009

until late January 2010.

86.     Sanchez had been doing purification for approximately two or three weeks

when she had an incidence where she fainted.  When Sanchez awoke she drank water and

Fox said she had to go in the sauna.  Sanchez understood that Scientologists believe that

when something like that happens during a purification Course, it is a good thing because

it means the person released something form themselves.  Sanchez had to go back into

the sauna that day.

87.     The next day, after the fainting episode, Sanchez goes to work but does

not do purification.  She does not go to purification for the next two or three days.  Fox

approached Sanchez at work and asked why she had not gone to the Church of

Scientology to continue purification.

88.     Approximately three days after the fainting episode, Sanchez, Dania (last

name unknown) and Alarcon meet at work to discuss the purification Course.  Sanchez

tells Alarcon she does not want to go back to the Church of Scientology for purification.

Alarcon responds, "you work for Nobbe, and Nobbe is paying for this."  Sanchez went

back to the Church of Scientology to do purification Course to keep her job.

89.     The "purification" process Sanchez underwent is a religious practice of

Scientology.  The "Purification Rundown" is a detoxification program which enables an

individual to rid himself of the harmful effects of drugs, toxins and other chemicals that

lodge in the body and create a biochemical barrier to spiritual well-being.  It is a regimen

of exercise, sauna and nutrition developed by L. Ron Hubbard.

90.     On or about January 2010, when Sanchez finished purification, Fox told her she had to go on to the next step which was to take Courses at the Church of Scientology.

91.     Sanchez went to the classroom located at the Church of Scientology in Coral Gables, the same place where she had done the purification Course, and a person there gave her a course book.  Sanchez said the book the person gave her at the Church of Scientology was titled "Learning to Learn."  The exact same Course she had done at Dynamic she was now asked to do at the Church of Scientology. Sanchez told the person who handed her the book that she was one of Nobbe's employees and that she had already done that course.  The person said, "Oh Ok," and brought her another course book, but it was also a Course she had already done at Dynamic.  Fox explained to Sanchez that this was correct, that she would have to do Courses again, but instead she would do them at the Church of Scientology.

92.     On or about late January or early February of 2010, after the day that Sanchez went to the Course at Church of Scientology, she stopped going regularly to the Church of Scientology.  Throughout February 2010, Alarcon approached Sanchez several times at work and asked why she was not going to the Church of Scientology.  Sanchez went two or three times to the Church of Scientology between late January and February 2010 in an attempt to keep her job at Dynamic.

93.     Alarcon and Fox noticed Sanchez was not attending the Church of Scientology regularly.  Sanchez was fired in March 2010.

<u>Yanileydis Capote</u>

94.     Yanileydis Capote worked for Dynamic from May 2009 to approximately May or June 2010.  Capote's position was Public Patient Relations, working directly with doctors and patients in the clinic.

95.     Capote went in for an interview April 29, 2009 and started in June 1, 2009

96.     Shortly after being hired, Ana Garcia and Betsy Blair told Capote to be at Westland Mall Clinic at 8 a.m. the next day for the Courses.

97.     The first day Capote attended the Courses, Crespo told Capote the Courses were based on books written by L. Ron Hubbard.   Capote started with the course titled "Learning to Learn."  She also took a course where she screamed at an ashtray which took the entire day.  Other examples of courses included: "How to Get Things Done," "Eyes Open, Eyes Closed," and one where she had to throw a co-worker up against the wall.

98.     Capote did courses from 8 a.m. to 5 p.m. and then she went to the Coral Gables Location to do Public Patient Relations work.

99.     Approximately six months after starting the Courses, Capote told Ana Garcia that she wanted to stop doing the Courses.  Shortly after Capote's conversation with Ana Garcia, Alarcon approaches Capote after she finished a course.  Alarcon gives Capote two books, "Dianetics" and "The Way to Happiness" and tells her she has to read a chapter from "The Way to Happiness" and then complete a hand-out on her reading. After Capote is done completing that hand-out, Alarcon gives her a paper to sign stating that Capote is doing the exercise voluntarily.  Alarcon then leads her through a similar procedure using the "Dianetics" book.  Afterwards, Alarcon takes Capote into Nobbe's

16

office and tells Capote to watch a video on "Dianetics."  Alarcon also told Capote that

Nobbe wanted her to read "The Way to Happiness" and "Dianetics."

100.    After this occurred Capote did not attend courses.  Later, Nobbe met with

Capote and told her she had to attend the Courses again.  Capote told Ana Garcia that she

did not want to go back to the Courses, but Ana Garcia said she had to go back.

101.    Capote was also required to sell copies of books "The Way to Happiness,"

"Original Thesis," and "Dianetics."

102.    Capote resigned on or about May or June 2010.

Class of Individuals

103.    Dynamic required other employees to attend the Courses.  These present

and/or former employees for which EEOC seeks relief were required to attend Courses to

keep their jobs.

104.    Dynamic supervisors and Course instructors told other employees for

which EEOC seeks relief to attend Courses, seminars, and participate in religious

practices at the Church of Scientology.

<strong><u>STATEMENT OF CLAIMS</u></strong>

105.    Paragraphs 12 through 104 are incorporated herein.  Dynamic engaged in

unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §

2000e-2(a), by subjecting Norma Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis

Capote to disparate treatment based on religion when the employer coerced them to adopt

Scientology religious practices and beliefs as a condition of continued employment.

106.    Paragraphs 12 through 104 are incorporated herein.  Dynamic engaged in

unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §

17

2000e-2(a), by subjecting Norma Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis Capote, and a class of individuals to a hostile work environment based on religion by the employer's unwelcome imposition upon them of Scientology religious views and practices.

107.     Paragraphs 12 through 46 and 47 through 56 are incorporated herein. Dynamic engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by failing to accommodate the religious beliefs of Norma Rodriguez, who requested not to participate in Scientology religious practices and teachings on the grounds that she is a Jehovah's Witness

108.     Paragraphs 12 through 46, 47 through 56, and 70 through 93 are incorporated herein.  Dynamic engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by terminating Norma Rodriguez and Rommy Sanchez based on their failure to conform to employer's Scientology religious practices and beliefs.

109.     Paragraphs 12 through 46, 47 through 56, and 70 through 93 are incorporated herein.  engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by terminating Norma Rodriguez and Rommy Sanchez in retaliation for opposing Dynamic's unlawful employment practices by refusing to participate in Dynamic's Scientology practices.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

110.     Grant a permanent injunction enjoining Dynamic, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in

employment practices which discriminate on the basis of religion in violation of Section 703(a) of Title VII.  This shall include, but is not limited to, enjoining Dynamic from mandating Courses that involve participating in Scientology religious practices, enjoining Dynamic from mandating employees to participate in religious practices, courses, and/or any teachings at the Church of Scientology; and

111.    Grant a permanent injunction enjoining Dynamic, its officers, successors, assigns and all persons in active concert or participation with it, from retaliating against employees for engaging in conduct protected by Section 704(a) of Title VII, including but not limited to objecting to participating in any activity at employer's places of business or at the Church of Scientology that involve religious practices and/or teach religious content; and

112.    Order Dynamic to institute and carry out policies, practices, and programs which provide equal employment opportunities for individuals of all religions, including but not limited to non-Scientologists, and which eradicate the effects of its past and present unlawful employment practices; and

113.    Order Dynamic to make whole Norma Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis Capote, and a class of individuals subjected to disparate treatment and/or a hostile work providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 12 to 104 above, including, but not limited to, relocation expenses, job search expenses, and medical expenses, in amounts to be determined at trial;

114.    Order Dynamic to make whole Norma Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis Capote, and a class of individuals subjected to disparate treatment

and/or a hostile work environment by providing past and future nonpecuniary losses resulting from the unlawful employment practices complained of in paragraphs 12 to 104 above, including emotional and physical pain, suffering and mental anguish, in amounts to be determined at trial; and

115.    Order Dynamic to pay Norma Rodriguez, Maykel Ruz, Rommy Sanchez, Yanileydis Capote, and a class of individuals subjected to disparate treatment and/or a hostile work environment punitive damages for its malicious and reckless conduct, as described in paragraphs 12 to 104  above, in amounts to be determined at trial; and

116.    Order Dynamic to make whole Norma Rodriguez and Rommy Sanchez by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to awarding front pay to Norma Rodriguez and Rommy Sanchez;

117.    Grant such other further relief as the Court deems necessary and proper in the public interest; and

118.    Award the Commission its costs in this action.

## JURY TRIAL DEMANDED

119.    The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated May 8, 2013

Respectfully submitted,

P. DAVID LOPEZ
General Counsel
JAMES L. LEE
Deputy General Counsel

20

GWENDOLYN YOUNG REAMS
Associate General Counsel
U.S. Equal Employment Opportunity
Commission
131 M Street, N.E.
Washington, D.C. 20507

ROBERT E. WEISBERG
Regional Attorney
KIMBERLY A. McCOY-CRUZ
Supervisory Trial Attorney

/s/ Beatriz Biscardi
Beatriz Biscardi
Trial Attorney
Bar ID No. A5501597
U.S. Equal Employment Opportunity
Commission
Miami District Office
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: 305-808-1783
Fax: 305-808-1835
beatriz.biscardi@eeoc.gov